MATTHEW WILLIAM KUMIN, CSB 177561
THE LAW OFFICES OF MATTHEW KUMIN
A PROFESSIONAL CORPORATION
870 Market Street, Ste. 1128
San Francisco, Ca 94102
Tel: 415-434-8454
Fax:415-434-8453
matt@mattkuminlaw.com

Attorneys for Plaintiff
BESPAQ CORP.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BESPAQ CORP.<br><br>        Plaintiff,<br><br>    vs.<br><br>HAO SHEN TRADING CO., LTD, dba SHANGAI HANSON INDUSTRIAL CO, LTD, dba HANSON, dba, HANNSON; ANHWEI HUAMEI ART PRODUCT CO., LTD. dba ANHUI ART PRODUCTS; GERALD FORD dba MINIATURE FURNITURE; and DOES 1-100, inclusive,<br>        Defendants. | Case No.: C 04 3698 PJH<br><br>**MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION** |

# Table of Contents

**TABLE OF AUTHORITIES**………………………………………………...........4

**INTRODUCTION**……………………………………………………………….7

**WHY A TRO IS NECESSARY**…………………………………………….......7

**STATEMENT OF FACTS**……………………………………………………...8

**A. Plaintiff's Business and Products**…………………………………………...8

**B. Plaintiff's Copyrights**……………………………………………………...9

**C. Defendants' Infringements**………………………………………………....10

     1.  ANHWEI…………………………………………………………10
     2.  HANSSON………………………………………………………10
     3.  FORD……………………………………………………………...11

**D.  Defendants Infringing Catalogue**…………………………………………11

**E.  Plaintiff's Trade Dress**……………………………………………………...12

**ARGUMENT**…………………………………………………………………...12

**I.  A Preliminary Injunction Should be Granted Because it is the Only Remedy to Effectively Reestablish the Pre-Infringement Status Quo Preventing and Restraining Further Infringement**………………………………………………………………12

    **A.  The Copyright Act Authorizes Injunctive Relief**……………………………12

    **B.  Plaintiff Satisfies the Requirement for Injunctive Relief Since It Will
       Likely Prevail on The Merits of a Number of Its Causes of Action**………………………13

       **1.  Plaintiff is Likely to Succeed on the Merits of its Copyright Claim**……………..13

         **a. Standard**……………………………………………………....13
         **b. Plaintiff is the Owner of Valid Copyright Protectable
            under the Copyright Act**……………………………………14
         **c. Defendants Copied Plaintiff's Works**…………………………………16
             **(1) Defendants Had Access to Miniatures and Photographs**………...16
             **(2) Defendants' Copying Is Blatant and Undeniable**………………16
             **(3) Defendants' Works are Substantially Similar to Plaintiff's**………17
               **A) Intrinsic test**……………………………………………17
               **B) Extrinsic test**……………………………………………18
          **d.  Conclusion**……………………………………………………...18

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

– 2 –

**2. Plaintiff is Likely to Succeed on the Merits of its Unfair Competition Claim under the Lanham Act § 43**................................................................**18**

    **a.  Standard**................................................................**18**

        **1)  Non-functional**.................................. ....**19**

        **2)  Inherent Distinctiveness/Secondary Meaning**......................**19**

            **A)  Inherent Distinctiveness**.............................**19**
            **B) Secondary Meaning**......................................**20**
            **C) Likelihood of Confusion**.................................**20**

**3.   Plaintiff is Likely to Succeed on the Merits of its Unfair Competition Claim under Cal. Business and Professions Code § 17200**.........................**21**

    **a.  Standard**................................................................**21**

    **b. The Defendant's Acts Constitute Unfair Business Practices Since They Stole Trade Secrets and Purposefully Under-priced the Unauthorized Copies**.............................................**21**

**C.  Plaintiff will be Irreparably Harmed if Defendants Are Not Enjoined from Continuing its Unfair and Infringing Activities** ....................................**22**

    **1.  Standard**................................................................**22**

    **2.   Injury to Plaintiff is Nonetheless Irreparable**.............................**23**

**D. In the Absence of an Injunction, the Continued Injury to Plaintiff BESPAQ Resulting From Defendants' Infringement Substantially Outweighs Any Injury to Defendants Which Might Be Caused by the Issuance of the Proposed TRO and Preliminary Injunction**................................................................**25**

    **1. The Balance of Hardships Tips in Plaintiff's Favor**........................**25**

**E.  Security Should Not be Required**................................................**25**

**CONCLUSION**................................................................**26**

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

– 3 –

**Table of Authorities**

**Cases**

Apple Computer Inc. v. Formula Int'l, Inc., 725 F.2d 521 (9th Cir. 1984)…………………………..13, 22

Baxter v. MCA Inc., 812 F.2d 421, 423-24 & n.2 (9th Cir.), cert. denied, 484 U.S. 954, 108 S.Ct 346 (1987) (dictum) ....................................................................................................... 16

Berkic v. Crichton, 761 F.2d 1289, 1291 (9th Cir.), cert. denied, 474 U.S. 826, 106 S.Ct. 85 (1985) ..... 14

Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd., 243 F. Supp. 2d 444; 2003 U.S. Dist. LEXIS 1942 (D.C.M.D. N.C. 2003)………………………………..………………………..15

Community for Creative Non-Violence et al. v. Reid, 490 U.S. 730; 109 S. Ct 2166 ............................ 15

F. W. Woolworth Co. v. Contemporary Arts, Inc., 193 F.2d 162 (1st Cir. 1951)…………………..15, 16

Fleischer Studios, Inc., v. Ralph A. Freundlich, Inc., 73 F.2d 276 (2nd Cir. 1924)................................. 15

Gucci Timepieces America, Inc. v. Yidah Watch Co., 1998 U.S. Dist. Lexis 15972 (C.D.Cal.1998)18-22

Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 552-553 (1985) ............................ 23

International Jensen Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819 (9th Cir. 1993).................................. 21

Jin Ching Industrial, Inc. v. Wong's International Trading Import and Export, Inc.,1998 U.S. Dist. LEXIS 14759; 47 U.S.P.Q.2D (BNA) 1509. (D.C.C.D.Cal. 1998)…………………………….………15

Kamar International v. Russ Berrie & Co., 657 F.2d 1059, 1062 (9th Cir. 1981)..................................... 16

Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042, 1045 (9th Cir. 1994) ................................... 17

Lin Brook Builders Hardware v. Gertler, 352 F.2d 298, 1965 U.S. App. LEXIS 4204; 147 U.S.P.Q. (BNA) 265 (9th Cir. 1965)………………………………………………………………………15

MAI Systems Corp. vs. Peak Computer, Inc., 1992 U.S. Dist. Lexis 21829, 21832 (CD Cal. 1992)..13,25

Meta-Film Associates, Inc. v. MCA, Inc., 586 F. Supp. 1346, 1362 (C.D.Cal. 1984)............................ 21

Metcalf v. Bochco, 294 F.3d 1069 (9th Cir. 2002), 2002 U.S. App. Lexis 11278, 63 U.S.P.Q. 2d (BNA) 1412………………………………………………………………………………………...18

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 4 –

M.S.R. Imports, Inc. v. R.E. Greenspan Company, Inc., 1983 U.S. Dist. LEXIS 17397 (D.C.E.D.Pa.); 220 U.S.P.Q.(BNA) 361; Copy. L. Rep. CCH P25,571……………………...…………………………15

Novelty Textile Mills, Inc.v. Joan Fabrics Corp., 558 F.2d 1090; 1977 U.S. App. LEXIS 12494; 195 U.S.P.Q. (BNA) 1 (2nd Cir. 1977)……………………………………………………...…..15

Rodeo Collection Ltd., v. West 7th, 812 F.2d 1215, 1217 (9th Cir. 1987)……………………………20,21

Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir. 1990)………………………………………………17, 18

Sid & Mary Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1162 (9th Cir. 1977) . 13

Smith v. Montoro, 648 F.2d 602, 604 (9th Cir. 1982)........................................................................ 21

Triad Sys. Corp. v. Southeastern Express Co., 64 F.3d 1330 (9th Cir. 1995)…………………………..22

Universal Athletic Sales Co. v. Salkeld, 511 F.2d 904, 907 (3rd Cir.), cert. denied, 423 U.S. 863, 96 S.Ct. 122 (1975) ................................................................................................................ 14

**Federal Statutes**

17 U.S.C. §101……………………………………………………………………………………...23

17 U.S.C §102........................................................................................................................ 16

17 U.S.C. §102(a)(5) ................................................................................................................ 14

17 U.S.C. § 410(c) .................................................................................................................... 15

17 U.S.C. § 502(a) ............................................................................................................. 12, 25

17 U.S.C. §106(1) .................................................................................................................... 17

17 U.S.C. §106(2) .................................................................................................................... 17

17. U.S.C. §411(a) ................................................................................................................... 14

**State Statutes**

Cal. Bus. & Prof. Code §§ 17200, 17203 ................................................................................ 21

**Federal Rules of Civil Procedure**

Fed Rules Civil Procedure, Rule 65…………………………………………………………………7,11

Fed. R. Civ. Pro. Rule 65(c)..................................................................................................... 25

**Treatises**

1 J. Thomas McCarthy, <u>Trademarks and Unfair Competition</u> §7:26 (2d ed. 1984) ................................ 21

J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> (4th ed. 1998) ....................... 21

1-2 <u>Nimmer on Copyright</u> § 2.08……………………………………………………………………14. 16

1-2 <u>Nimmer on Copyright</u> §2.08[B]……………………………………………………………..15

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 6 –

**INTRODUCTION**

Plaintiff, BESPAQ CORP., pursuant to Fed.R.Civ.P. 65  seeks a temporary restraining order and a preliminary injunction in its action for copyright infringement, unfair competition, and unfair business practices against Defendants HAO SHEN TRADING CO., LTD, dba SHANGAI HANSON INDUSTRIAL CO, LTD, dba HANSON, dba HANNSON, dba HANSSON;  ANHWEI HUAMEI ART PRODUCT CO., LTD. dba ANHUI ART PRODUCTS; and GERALD FORD dba MINIATURE FURNITURE.

For over two decades, Plaintiff has designed, created, manufactured, sold, and promoted original dollhouse miniatures (i.e., furnishings for dollhouses), and has received federal statutory copyright protection for these miniatures or has applied for copyright registration.  In the last few months, Plaintiff became aware that Defendants have reproduced, manufactured, sold, and promoted (to Plaintiff's potential customers) numerous miniatures which are slavish copies of Plaintiff's protected works.

The evidence presented in conjunction with this motion demonstrates that Defendants each willfully, knowingly, and repeatedly infringed upon Plaintiff's protected works. They also engaged in a pattern of unfair competition with Plaintiff that has included identically reproducing Plaintiff's protected dollhouse miniatures and photographs, intentionally using photographs of Plaintiff's works in their own promotional materials for the purpose of making and selling infringing works, and selling the products at one-half Plaintiff's wholesale price.

In sum, Defendants have purloined Plaintiff's intellectual property while Plaintiff has received absolutely no compensation.

**WHY A TRO IS NECESSARY**

Plaintiff can demonstrate the likelihood of prevailing in its various causes of action, and faces immediate and irreparable harm for three reasons unless Defendants are immediately restrained from continuing their infringing and unfair conduct.  (Ginsburg Decl., ¶28.)

First, Defendant HANSSON has contracted for advertising space in a nationally distributed trade magazine, <u>Miniature Collector</u>, circulating 23,000 copies, for the October, November and December

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 7 –

issues.  Although the October issue was published the publisher is still working on the November and December issues.  The publisher has indicated to Plaintiff that if the TRO issues, it will pull Defendant's offending ads. (Id., ¶28 and Exhibit 13, showing the advertisement.)

Second, Defendant HANSSON has been aggressively contacting Plaintiff's customers after a trade show held a few weeks ago.  HANSSON obtained the mailing list during the show.  The marketing effort to Plaintiff's customers includes calling and sending them its catalogue, referring them to its website and offering them the same products for one-half of Plaintiff's wholesale price.  HANSSON has also attempted, as of late, to enter the many industry and retail trade shows held around the country.   It recently sought to be included in a retail trade show in Northern California and Plaintiff objected to HANSSON's presence to that show's producer.

Third, Defendant FORD (and other not yet named) currently display Plaintiff's products on his E-Bay website and each day of sales at his anti-competitive low prices undercuts BESPAQ's business.

Additionally, Defendant ANHWEI continues to manufacture the unauthorized products but has obviously stepped up its marketing through its collaboration with the other defendants.

On that basis, Plaintiff asks that its application for a temporary restraining order and a preliminary injunction be granted.

## STATEMENT OF FACTS

The facts relevant to this motion are fully set forth in the accompanying Declarations of Jayme "Pit" Ginsburg, Jimmy Chang, the vice-president and president of Plaintiff, respectively, and the declarations of agents of six of Plaintiff's national distributors-dealers (Nancy's Dollhouses and Miniatures, Tee Ridder Miniatures Museum, Dollhouse Delights, Miniature Memories, Stevenson's Doll House and Miniatures, and Shellie's Miniature Mania) and the Exhibits thereto.  The instant recitation accordingly only summarizes the most pertinent details.

### A. Plaintiff's Business and Products

Founded in 1984, Plaintiff has been in the business of designing, manufacturing, selling, and promoting original dollhouse furniture and furnishings, also referred to as miniatures.  These items

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 8 –

are highly prized by collectors, most of whom are adults.   The pieces are distributed throughout the United States and internationally, often for hundreds of dollars per item.    (Decl. of Pit Ginsburg, ¶¶2, 5)

BESPAQ's unique products are all handmade and are widely recognized for their originality. Indeed, the products have become identified with the Company.  BESPAQ is a prominent player in this market due, among other factors, to its longstanding quality work and its reputation as a reliable supplier.  (Id., ¶¶7, 9.)

Since its founding, Plaintiff's designs, including its combinations of upholstery and wood, unique bases and carvings, and its inlays, have become distinctive designs in a "trademark" sense and are recognized in the marketplace as being created by BESPAQ.  (Id., ¶10.)

**B. Plaintiff's Copyrights**

Plaintiff has applied for copyright registrations for all of its miniature products and for the photographs of its products.   So far, Plaintiff has received a copyright registration for its year 2000 catalogue, encompassing the photographs and the products contained in that catalogue.  (Complaint, ¶16, Exhibit 2.)  Plaintiff has applied for copyrights for the remaining catalogues and is the sole author and retains all right, title, and interest to the protected materials, including its trade secrets, pursuant to U.S. copyright laws and California common and statutory law (Ginsburg Decl., ¶ 17.)

BESPAQ has limited and controlled the distribution of its copyrighted works.  Prospective customers obtain catalogues containing photographs of the miniatures.  They can also visit BESPAQ's website to review the items.  Plaintiff then distributes its protected works through several national distributors under express and limited agreements.  (Id.)

Plaintiff has never authorized modification or reproduction of the protected works, and has authorized third party distribution solely pursuant to express agreement. (Id.)

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 9 –

**C. Defendants' Infringements**

    1. <u>ANHWEI</u>

In the early 1990's, and drawing upon BESPAQ president, Jimmy Chang's family and personal ties in Mainland China, Plaintiff developed a manufacturing facility in the People's Republic of China, a facility owned independently by Chinese nationals.  The Company's relationship with that manufacturing facility and its owners, defendant ANHWEI, figures prominently in the current action. (Declaration of Jimmy Chang.)

Defendant ANHWEI was formerly Plaintiff's Chinese manufacturing partner.  The relationship between the Plaintiff and defendant ANHWEI deteriorated and in the year 2002, the two parties formally dissolved their "partnership."  The written dissolution agreement provided for Plaintiff to pay ANHWEI a sum certain and to give up ownership of property in exchange for ANHWEI not to compete with Plaintiff. (Complaint, Exhibit 4.)   During the years when the two parties did work together, ANHWEI had full access to Plaintiff's designs and photographs of the miniatures.  No other entity or person had access to the photographs or products other than ANHWEI and ANHWEI was supposed to protect BESPAQ's trade secrets.  (Chang Decl., ¶8; Ginsburg Decl., ¶ 14.)

Plaintiff's transactional attorney wrote to the ANHWEI representatives on April 8, 2004, requesting that they cease and desist from producing and distributing BESPAQ's products.  That company has not responded. (Complaint, Exhibit 8.)

    2. <u>HANSSON</u>

Plaintiff's first knowledge of or contact with HANSSON occurred in late March, 2004.  At that time Plaintiff's vice-president, Pit Ginsburg, received a call from a Bay Area dealer of Plaintiff's goods.  The dealer explained to Ginsburg that a HANSSON sales representative had paid her a visit and left her a catalogue. (Ginsburg Decl., ¶16.)

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 10 –

Ginsburg obtained a copy of the catalogue and instantly recognized all but a few items as being exact duplicates of BESPAQ's line of miniatures.    Additionally, Ginsburg noted that many of the photographs in the HANNSON catalogue were photographs of the miniatures owned by BESPAQ. Ginsburg then went to the HANNSON address listed on a business card belonging to the sales representative, one Hong McKinsey.  He spoke with a woman who identified herself as Lilly.  During their conversation Ginsburg indicated that HANNSON's catalogue and the products displayed were all, with a few exceptions, BESPAQ's products and asked her to stop distributing the products.  She indicated she would get back to him.  When she did call, she asked to see copyright registrations.  The two also discussed legal action BESPAQ would take if HANNSON did not stop distributing the products. (Id., ¶16, 17.)  HANNSON has refused to stop despite a demand.  (Complaint, Exhibit 7.)

HANNSON continues to aggressively market the "knock-offs", through its website, through its mailing campaign, through its print advertising and through its presence at trade shows.  (Id., ¶28.)

3.  FORD

Defendant FORD displayed photographs of the BESPAQ's miniatures on the E-Bay web site, offering the items for sale.  Plaintiff's attorney wrote a cease and desist letter to FORD on April 8, 2004.  (Complaint, Exhibit 6)  Ford has not removed the photographs, the advertisements for the products, or the offer to sell them, from the E-Bay website. (Ginsburg Decl., ¶17, 27.)

**D.  Defendants Infringing Catalogue**

Defendants are using a catalogue to sell and promote the BESPAQ copies to prospective customers, many of whom are BESPAQ customers. (Id., ¶16; Complaint, Exhibit 3.)  The photographs in the catalogue display pictures of Plaintiff's protected works.  (See comparison of catalogues, ¶8 and Exhibit 5 to Declaration of Pit Ginsburg, which graphically underscores the infringement.)   Defendant HANNSON has in fact provided that catalogue or a solicitation letter to a number of Plaintiff's dealers and in one case, provided a catalogue with an attached business card of Hong McKinsey, identified as a

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANNSON et al.

- 11 –

sales representative of HANNSON.  (Id., ¶¶18, 22-25; Declaration of Shellie Kazan.)   By selecting, arranging, editing, and modifying Plaintiff's protected works to create works for sale, Defendants have also prepared derivative works based upon Plaintiff's protected works, which are infringing or violate state law.

**E.  Plaintiff's Trade Dress**

Plaintiff has developed non-functional, inherently distinctive, designs and carvings for miniature furniture. (Decl. of Pit Ginsburg, ¶10, 11.)  Plaintiff's designs are not essential to the miniatures' use or purpose, but are rather merely ornamental.  Plaintiff has made significant efforts to develop unique and original designs that stand out in the mind of its customers over and above the rest of the market.  (Id., ¶10.)  The totality of elements in Plaintiff's miniatures identify Plaintiff as the particular source of this type of unique miniatures.  Articles have been written that confirm Plaintiff's distinctive style.  (Decl. of Pit Ginsburg, ¶10.)

An examination of Defendants' catalogue reveals that the miniatures are identical to Plaintiff's protected miniatures.  (Id., Exhibit 5.)   Defendants' miniatures and designs, when compared to Plaintiff's, are so similar that customers have reported being confused (Declarations of Shellie Kazan, Kathleen Stevenson, and Joan Holst.) This has already occurred at one trade show. (Ginsburg Decl., ¶28.)  In fact, without a careful eye, even the Plaintiff could be fooled. (Decl. of Pit Ginsburg, ¶17.)

**ARGUMENT**

**I. A Preliminary Injunction Should be Granted Because it is the Only Remedy to Effectively Reestablish the Pre-Infringement Status Quo Preventing and Restraining Further Infringement**

**A.  The Copyright Act Authorizes Injunctive Relief**

Plaintiff seeks a temporary restraining order and a preliminary injunction designed to stop Defendants from continuing to infringe upon Plaintiff's copyrights based upon the Copyright Act.  The United States Copyright Act specifically provides that "[A]ny court having jurisdiction of a civil action

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 12 –

arising under this title may … grant temporary … injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a) (1976).  Injunctive relief is designed to re-establish the *status quo* before the infringing activity began.

Further, the facts here amply demonstrate the prerequisites for relief exist under the traditional standard applied by the Ninth Circuit because Plaintiff has established:

    (1)    the probability of success on the merits on all claims;

    (2)    irreparable injury if the injunctive relief is denied;

    (3)    that the balance of hardship is in favor of the moving party; and

    (4)    that granting the injunction is in the public interest.

MAI Systems Corp. v. Peak Computer, Inc., 1992 U.S. Dist. Lexis 21829, 21831 (*31) (D.C.C.D.Cal. 1992) citing U.S. v. Odessa Union Warehouse Co-Op, 833 F.2d 172, 174 (9th Cir. 1987); *see, e.g.,* Apple Computer Inc. v. Formula Int'l, Inc., 725 F.2d 521 (9th Cir. 1984).

Plaintiff has also shown – under the alternative test adopted in this Circuit – that:

    (1)    serious questions are raised and the balance of hardships tips sharply in the favor of the moving party, or

    (2)    the moving party will probably succeed on the merits and will possibly suffer irreparable injury without injunctive relief.  MAI Systems Corp. v. Peak Computer, Inc., 1992 U.S. Dist. Lexis 21829, 21832 (*32) (D.C.C.D.Cal. 1992) citing Wyckoff Co. v. Environmental Protection Agency, 796 F.2d 1192, 1198 (9th Cir. 1986).

Since both a substantial likelihood of success and significant irreparable injury are present here, and an injunction is in the public interest, the injunction should issue.

**B.  Plaintiff Satisfies the Requirement for Injunctive Relief Since It Will Likely Prevail on The Merits of a Number of Its Causes of Action**

    **1.  Plaintiff is Likely to Succeed on the Merits of its Copyright Claim**

**a. Standard**

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 13 –

The likelihood of success on the merits in a copyright action is demonstrated by a showing of (1) ownership of a valid copyright in the subject miniatures and photographs and (2) the copying of the original work by Defendants. <u>Sid & Mary Krofft Television Prods., Inc. v. McDonald's Corp.</u>, 562 F.2d 1157, 1162 (9th Cir. 1977).  Because copying can be proven circumstantially by evidence of access and substantial similarity, <u>Universal Athletic Sales Co. v. Salkeld</u>, 511 F.2d 904, 907 (3rd Cir.), <u>cert. denied</u>, 423 U.S. 863, 96 S.Ct. 122 (1975), Plaintiff's burden of proving copyright infringement amounts to a showing that: (1) it owns the copyright in the subject miniatures and photographs; (2) Defendants had access to the those miniatures and photographs; and, (3) Defendants' products are substantially similar to Plaintiff's copyrighted works. *See* <u>Berkic v. Crichton</u>, 761 F.2d 1289, 1291 (9th Cir. 1985), <u>cert. denied</u>, 474 U.S. 826, 106 S.Ct. 85 (1985) (to establish a successful copyright claim, a Plaintiff must show ownership, access, and substantial similarity).

**b. Plaintiff is the Owner of Valid Copyright Protectable under the Copyright Act**

The complaint includes a copy of the copyright registration and numerous applications by Plaintiff. (Complaint, ¶16 & Exhibits 2, 3.)  The registration for the year 2000 catalogue and the applications for the other catalogues satisfy the jurisdictional condition precedent for filing an infringement suit contained in 17 U.S.C. § 411(a).

Plaintiff's miniatures and photographs are protectable copyrightable subject matter pursuant to 17 U.S.C § 102(a)(5), which states in part:

(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device.  Works of authorship include the following categories:

...

(5)	pictorial, graphic, and sculptural works.

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 14 –

In his seminal treatise on Copyright, Nimmer describes the scope of "pictorial, graphic, and sculptural works" in Section 102(a)(5) as follows:

> Section 102(a)(5) of the Copyright Act specifies as copyrightable works of authorship "pictorial, graphic and sculptural works." These are defined to "include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, and models." 1-2 Nimmer on Copyright, §2.08.

He states further in that section that,

> Included within the Section 102(a)(5) category of pictorial, graphic, and sculptural works are "'works of art' in the traditional sense ... [and] also works of graphic art, and illustration, art reproductions ... and works of 'applied art.'" This includes not only the fine arts of painting, drawing, and sculpture, but also (subject to the qualifications discussed below), works of applied art.  Id., at §2.08[B].

Miniatures and photographs, and particularly "miniatures" of the type protected by Plaintiffs' copyrights, have been recognized in numerous cases as deserving copyright protection. M.S.R. Imports, Inc. v. R.E. Greenspan Company, Inc., 1983 U.S. Dist. LEXIS 17397 (D.C.E.D.Pa. 1983); 220 U.S.P.Q. (BNA) 361; Copy. L. Rep. CCH) P25,571 (copyright protection for miniature wagon, injunctive relief granted);  Jin Ching Industrial, Inc. v. Wong's International Trading Import and Export, Inc.,1998 U.S. Dist. LEXIS 14759; 47 U.S.P.Q.2D (BNA) 1509. (D.C.C.D.Cal. 1998)  (copyright protection and injunctive relief available for infringement of artwork products such as clock figurines); Lin Brook Builders Hardware v. Gertler, 352 F.2d 298, 1965 U.S. App. LEXIS 4204; 147 U.S.P.Q. (BNA) 265 (9th Cir. 1965) (catalogue of photographs of hardware products for sale subject to copyright protection); Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd., 243 F.Supp.2d 444; 2003 U.S. Dist. LEXIS 1942 (D.C.M.D.NC. 2003) (furniture collection copyrightable and protectable); Fleischer Studios, Inc., v. Ralph A. Freundlich, Inc., 73 F.2d 276 (2nd Cir. 1934) (stuffed toy dolls copyright protected); Novelty Textile Mills, Inc.v. Joan Fabrics Corp., 558 F.2d 1090; 1977 U.S. App. LEXIS 12494; 195 U.S.P.Q. (BNA) 1 (2nd Cir. 1977）（furniture upholstery copyright protected); F. W. Woolworth Co. v. Contemporary Arts,

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 15 –

Inc., 193 F.2d 162 (1st Cir. 1951) and cases therein cited. *See also* 1-2 Nimmer on Copyright § 2.08 citing Mazer v. Stein, 347 U.S. 201 (1954) (statuettes as protected copyrightable subject matter); Community for Creative Non-Violence et al. V. Reid, 490 U.S. 730; 109 S. Ct. 2166 (owner of the copyright of "sculpture"). Given its history of making the pieces, the copyright registration and applications, Plaintiff is clearly the owner of the copyrights under federal law and has clear claims under state law to ownership of its miniatures and photographs.

### c. Defendants Copied Plaintiff's Works.

### (1) Defendants Had Access to Miniatures and Photographs

Access is essentially undeniable on the instant facts. First, creation and sale of several copies identical to Plaintiff's copyrighted works establishes access as a matter of law. *See* Kamar International v. Russ Berrie & Co., 657 F.2d 1059, 1062 (9th Cir. 1981) ("proof of access requires only an opportunity to view or to copy plaintiff's work").

Second, access here, at least to one defendant directly, is a matter of fact. Specifically, Defendant ANHWEI was the former manufacturing partner of Plaintiff. As such, it has copies of the drawings, the actual photographs, the actual miniatures and related materials necessary for production of the items and the catalogues. (Ginsburg Declaration, ¶14.) Defendant HANNSON has BESPAQ photographs in its catalogue. The inference is clear: ANHWEI and HANNSON are cooperating in the production, marketing and distributions of the miniatures and photographs. Moreover, the striking similarity, i.e., identical copying between each of Defendant HANNSON's knock-offs and Plaintiff's works, obviates the need to show access, though access, as noted above, is clear. Baxter v. MCA Inc., 812 F.2d 421, 423-24, n.2 (9th Cir. 1987), cert. denied, 484 U.S. 954, 108 S.Ct. 346 (1987) (dictum).

### (2) Defendants' Copying Is Blatant and Undeniable

A side-by-side comparison of Defendant HANNSON's catalogue with Plaintiff's copyrighted works reveals blatant copying by Defendants. (Exhibit 5 to Pit Ginsburg Decl.) In most cases,

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 16 –

Defendants' infringing work is not only substantially similar, but is an identical copy.  In short, Defendants' copying is blatant.

Defendant HANNSON's own catalogue of images was produced with photographs of Plaintiff's copyrighted works passed off as works created and offered for sale by Defendants.  This amounts to an admission of copying.

### (3) Defendants' Works are Substantially Similar to Plaintiff's

Substantial similarity is a non-issue in this case given Defendants' copying of Plaintiff's copyrighted works.  Defendants have violated Plaintiff's reproduction right under 17 U.S.C. § 106(1) and also its adaptation right under 17 U.S.C. §106(2).  If one merely lays Defendants works over Plaintiff's copyrighted works, the literal, line by line copying is evident.  (See, Exhibit 5 to Decl. of Pit Ginsburg, comparison of the works.)

Even if the Court requires further analysis, Plaintiff can establish that Defendants' copies are substantially similar under the Ninth Circuit's rigorous two-part analysis – an extrinsic test and an intrinsic test – to determine whether two works are substantially similar.  Shaw v. Lindheim, 919 F.2d 1353, 1356 (9th Cir. 1990).

The initial inquiry is whether there is substantial similarity between the general ideas of the two works; the second inquiry is whether the expressions of the ideas are also similar.  The extrinsic test is an objective one that focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events."  Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042, 1045 (9th Cir. 1994) (citation and internal quotation marks omitted).

### A) Intrinsic test

The similarities between the relevant works are striking.  Both Defendants' copies and Plaintiff's copyrighted works are made with wood and upholstery and include the same curves, the same level of polishing, the same hand carved designs including the same routing paths, the same depths of carving

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 17 –

and placement of design motifs, shaped pedestals and even the same upholstery.  As one court noted in a quotation that aptly applies here, "[t]he totality of the similarities goes beyond the necessities … and belies any claim of literary accident."  Metcalf v. Bochco, 294 F.3d 1069, 1074 (9th Cir. 2002), 2002 U.S. App. Lexis 11278, 63 U.S.P.Q. 2d (BNA) 1412 (quoting Shaw, 919 F.2d at 1363).  Moreover, "[e]ven if none of these [common] ...elements is remarkably unusual in and of itself, the fact that both [works] contain all of these similar events gives rise to … substantial similarity of protected expression." Shaw, 919 F.2d at 1363.

### B) Extrinsic test

Plaintiff has painstakingly and creatively arranged various elements of carving, design, shape, and use of materials to develop its miniatures.  Defendants have included each of these elements in each of the offending works.  When Defendants' works are compared to Plaintiff's works, the similarities and common pattern in which they arise "satisfies the extrinsic test." Metcalf, 294 F.3d at 10.

### d.  Conclusion

Whatever test is used, it is clear that the Defendants have copied, manufactured, distributed, sold and marketed BESPAQ's protected works and accordingly, should be enjoined.

### 2. Plaintiff is Likely to Succeed on the Merits of its Unfair Competition Claim under the Lanham Act § 43(a).

#### a.  Standard

Plaintiff will succeed on its unfair competition claim under the Lanham Act because Plaintiff can show that its trade dress is (1) nonfunctional; (2) inherently distinctive or has acquired distinctiveness through secondary meaning; and (3) likely to be confused by members of the consuming public with the allegedly infringing use.  Gucci Timepieces America, Inc. v. Yidah Watch Co., 1998 U.S. Dist. Lexis 15972, 15977 (*7) (D.C.C.D.Cal.1998), quoting Stephen W. Boney, Inc., v. Boney Services, Inc., 127 F.3d 821, 828 (9th Cir. 1997).

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 18 –

Trade dress represents "the totality of elements in which a product … is packaged or presented … the whole visual image presented to customers." <u>Id</u>.  "Trade dress includes the total look of a product and its packaging and even includes the design and shape of the product itself", citing J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>, §8.1 (4th Ed. 1998).  Clearly, the standard is met here.

### 1)   Non-functional

A trade dress is non-functional if, taken as a whole, the collection of trade dress elements is not essential to the product's use or does not affect the cost or quality of the product even though certain particular elements of the trade dress may be functional.  1 J. Thomas McCarthy, <u>Trademarks and Unfair Competition</u> §7:26 (2d Ed. 1984).

The particular elements that make up a BESPAQ miniatures render those miniatures unique, different, and appealing from the perspective of the customer who wants a distinctive dollhouse miniature.  The elements of design do not alter the use of the miniatures nor change their nature as dollhouse miniatures.  Customers are assured that they are buying a BESPAQ miniature by the non-functional design elements that they have come to expect.

### 2)   Inherent Distinctiveness/Secondary Meaning.

### A) Inherent Distinctiveness

Plaintiff can also show that its trade dress is inherently distinctive or has a secondary meaning.  <u>Gucci</u> at *11.  A trade dress is "distinctive when it identifies the particular source of the product or distinguishes it from other products."  (<u>Id</u>.)

Articles written about Plaintiff's work emphasize the fact that each piece is distinctive.  The pieces are made from wood, not chipped wood and glue poured into a mold.  (Decl. of Pit Ginsburg, ¶11.)  The look of a BESPAQ miniature is so distinctive that when one walks into a trade show or into a

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 19 –

hobby shop, one can point to BESPAQ products (assuming no infringing copies) and say that they come from Plaintiff.

### B) Secondary meaning

A product configuration has secondary meaning under <u>Gucci</u> "'if the purchasing public associates that configuration with a particular source.'" <u>Gucci</u> at *12.  Plaintiff has exclusively and consistently used this configuration for the past twenty years, and has advertised its distinct style in its catalogues.   Plaintiff can thus make out the factors needed to "be assessed" to determine whether actual purchasers associate the product configuration with it.  <u>Id</u>.   Further, articles even attribute this product configuration to BESPAQ.  (Decl. of Pit Ginsburg, ¶10.)

### C) Likelihood of Confusion

Likelihood of confusion must be a probability, not simply a possibility.  <u>Rodeo Collection Ltd., v. West 7th</u>, 812 F.2d 1215, 1217 (9th Cir. 1987).  Likelihood of confusion exists here because consumers are "likely to assume that a product…" from Defendant "is associated with a source other than its actual source because of the similarities between the two products…" <u>Gucci</u> at *13-14.

Here, declarations bear out that the public has, in fact, confused Plaintiff's pieces from Defendant's copies. (See, Declarations of Shellie Kazan, Kathleen Stevenson, Joan Holst.)

Even if there was doubt in a "close case," Plaintiff can establish all of the factors that the Ninth Circuit has set forth to analyze the likelihood of confusion in trade dress infringement cases: (1) the strength of the trade dress (established by BESPAQ's unique designs); (2) the proximity of the goods – Defendants have confidently placed their knock-offs on websites and at trade shows; (3) the similarity of the product presentations is identical, as discussed above; (4) if senior management doesn't look closely, Plaintiff itself is easily confused as to whether a work is its own or the Defendants' (Ginsburg has declared as such); (5) Defendants market their products in the same channels as Plaintiff; (6) customers are unlikely to be able to tell the difference; and (7) Defendants are knowingly and intentionally using

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 20 –

Plaintiff's trade dress to compete with and harm Plaintiff.  Id. at *14, note 5. *See* also, <u>International Jensen Inc. v. Metrosound U.S.A., Inc.</u>, 4 F.3d 819, 823 (9th Cir. 1993) (citing <u>Vaughan Mfg. Co. v. Brikam Int'l Inc.</u>, 814 F.2d 346, 349 (7th Cir. 1987)).

Each element is satisfied in this case.  Accordingly, the TRO and injunction should issue.

### 3. Plaintiff is Likely to Succeed on the Merits of its Unfair Competition Claim under Cal. Business and Professions Code § 17200

#### a.  Standard

Under California unfair competition law, a court has very broad powers to enjoin "any unlawful, unfair or fraudulent business practice."  Cal. Bus. & Prof. Code §§ 17200, 17203.  This statute permits a court to "enjoin ongoing wrongful business conduct in whatever context such activity might occur." <u>Meta-Film Associates, Inc. v. MCA, Inc.</u>, 586 F.Supp. 1346, 1362 (D.C.C.D.Cal. 1984), quoting <u>Barquis v. Merchants Collection Association of Oakland, Inc.</u>, 7 Cal.3d 94, 111, 101 Cal. Rptr. 745, 496 P.2d 817 (1972).  Modern unfair competition law is designed to "encompass any form of competition or selling which contravenes society's current concepts of fairness…"  <u>Smith v. Montoro</u>, 648 F.2d 602, 604 (9th Cir. 1982), quoting 2 J. McCarthy, <u>Trademarks and Unfair Competition</u>, § 25:1 (1973).

#### b. The Defendant's Acts Constitute Unfair Business Practices Since They Stole Trade Secrets and Purposefully Under-priced the Unauthorized Copies

By copying Plaintiff's protected miniatures, Defendants have knowingly struck at the very heart of Plaintiff's business.  Defendants stole trade secrets, taking the distinctive designs and skills that make Plaintiff's works unique, and used those secrets to produce, market and distribute the copies, and offered cheaper copies to prospective customers (often BESPAQ's customers) looking for Plaintiff's style and skillful designs.  (Decl. of Pit Ginsburg, ¶21.)

Moreover, Defendants have engaged in a pattern of wholesale, identical copying of Plaintiff's miniatures and photographs all in an effort to pass off copies of Plaintiff's products as its own.  <u>Id.</u>

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 21 –

Defendants are attempting to trade on every aspect of the goodwill and business reputation Plaintiff has built up over two decades.

Defendants, by themselves or through agents, have used the photographs and the protected miniatures for the purpose of reproducing these for their own commercial advantage, all to Plaintiff's detriment.  That is, by any definition, unfair.  Defendants' use of a photograph catalogue of Plaintiff's works to sell Defendants' knockoff products to prospective customers (at Defendants' place of business, during sales visits, at trade shows, or via facsimile) simply compounds the unfairness.

When Defendants photographed, copied, and manufactured the relevant miniatures, they knew they were copying from its competitor, Plaintiff BESPAQ.  The Ninth Circuit has held that when an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public.  <u>Gucci</u>, 1998 U.S. Dist. Lexis at *20.   This is precisely the type of "unlawful, unfair or fraudulent" practice prohibited by § 17200, and Defendants should not be allowed to profit from such practices at Plaintiff's expense.  Plaintiff is thus entitled to the temporary restraining order and the preliminary injunctive relief it seeks.

### C.  Plaintiff will be Irreparably Harmed if Defendants Are Not Enjoined from Continuing its Unfair and Infringing Activities

#### 1.  Standard

Plaintiff has already demonstrated its strong likelihood of success on the merits in this action.  Thus, all that remains to be shown to entitle Plaintiff the injunctive relief it seeks is that irreparable injury to the Plaintiff is possible if Defendant is not enjoined.  <u>Apple Computer, Inc. v. Formula Int'l, Inc.</u>, 725 F.2d 521 (9th Cir. 1984).  Such a showing is easily made here since, in addition to Plaintiff's evidence demonstrating actual irreparable harm, such harm must, as a matter of law, be presumed in a copyright case.

For purposes of injunctive relief, a showing of a reasonable likelihood of success on the merits raises a *presumption* of irreparable harm.  <u>Triad Sys. Corp. v. Southeastern Express Co.</u>, 64 F.3d 1330,

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 22 -

1335 (9th Cir. 1995), quoting <u>Johnson Controls, Inc. v. Phoenix Control Sys., Inc.,</u> 886 F.2d 1173, 1174 (9th Cir. 1989).  In this case, Plaintiff has established by compelling evidence likelihood of success on the merits.  Therefore, irreparable harm may be presumed.

### 2. Injury to Plaintiff is Nonetheless Irreparable

Even if not presumed, the injury to BESPAQ is irreparable.  It is well known in the community that Plaintiff BESPAQ's skill is unique and original, and that BESPAQ has gone to great lengths to distinguish itself and its business from its competitors.  No other manufacturer of miniatures for dollhouse furnishings uses the combination of polished wood and upholstery, or the carvings that Plaintiff does.   No other manufacturer carves wood in the shapes, and with the motifs and the designs, of Plaintiff.  Its products are simply distinctive and the declarations of six (6) of its dealer-distributors attests to that.

Plaintiff's miniatures and photographs were never released outside of its control except to defendant ANHWEI and that was prior to the non-compete agreement.  In other words, the miniatures and related drawings, and the photographs themselves have not been made available to the public, i.e., "published" as defined by copyright law.  17 U.S.C. § 101 (publication is defined as "distribution of copies … of the work to the public by sale or other transfer of ownership, or by rental, lease, or lending").

The exclusive rights of an owner of protected property include the right to use, create derivative works from (including adapt), display, perform, and distribute the protected work.  Defendants seek to usurp Plaintiff's exclusive rights by blatantly copying, modifying, and distributing identical copies of the Plaintiff's copyrighted and protected works.  Further, the exclusive rights of an owner of the protected work includes the right to control first publication, including the decision as to "whether and in what form to release" the work.  <u>Harper & Row Publishers, Inc. v. Nation Enterprises</u>, 471 U.S. 539, 552-553 (1985).  Nevertheless, Defendants have usurped Plaintiff's right to control publication by

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 23 –

copying Plaintiff's protected and copyrighted works as embodied in the miniatures and photographs, and by distributing infringing copies of the Plaintiff's works.

Plaintiff legally controls the distribution of Plaintiff's copyrighted works through direct sales or authorized distributors in limited markets.  Defendants, however, by making infringing copies of the Plaintiff's copyrighted and protected works, and by distributing them, offering them for world-wide distribution without authorization, is not only directly infringing, but is also facilitating infringement by others.

The irreparable nature of the injury to Plaintiff BESPAQ, moreover, is further amplified because BESPAQ is unable (without Defendants' help) to completely identify: (1) how many persons have purchased infringing copies of the Plaintiff's protected and copyrighted works sold by Defendants; (2) how many persons have made copies of Defendants' unauthorized versions; (3) the names and/or addresses of those persons who have made copies of Defendants' unauthorized versions; and (4) whether copies of copies have been made and distributed.  Each day that Defendants' unauthorized creation, display, and distribution continue, Plaintiff BESPAQ is harmed by diverted sales and an inability to control its copyrighted works.  This should not be permitted.

The irreparable nature of the harm to Plaintiff is further revealed by the lack of any remedial mechanisms.  Plaintiff is unable to chase down all unlawful copies. Further, Plaintiff is unable to correspond with individuals who have purchased unlawful copies and, most importantly, because the unlawful copies are most probably distributed nationally and internationally to hundreds if not thousands of outlets, Plaintiff cannot overcome major barriers (logistical, publicity, and ethical) to retrieving and destroying these infringing copies.  Hence, Defendants should be required to post and publish a prominent acknowledgment of wrongdoing, cease all current sales, and destroy all infringing works in

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 24 –

progress. Such injunctive relief appears to be the only reasonable way "to prevent or restrain

infringement of a copyright" from continuing.  17 U.S.C. § 502(a).

 Defendants' deliberate and intentional infringement is causing irreparable harm to Plaintiff.  Any

refusal of Defendants to cease sales of infringing works and to destroy infringing works in progress,

including photographs and sketches of Plaintiff's protected and copyrighted works, clearly demonstrates

Defendants' intent to continue to infringe or facilitate continued infringement in the future, thereby

perpetuating the irreparable harm to Plaintiff.  Defendants have scoffed at Plaintiff's written requests.

(Decl. of Pit Ginsburg, ¶27.)

**D. In the Absence of an Injunction, the Continued Injury to Plaintiff BESPAQ Resulting From Defendants' Infringement Substantially Outweighs Any Injury to Defendants Which Might Be Caused by the Issuance of the Proposed TRO and Preliminary Injunction.**

 As demonstrated above, Plaintiff has suffered and will continue to suffer injury if Defendants are

allowed to continue the infringing conduct.  Defendants, on the other hand, will suffer no undue harm as

a result of being prevented from promoting, selling, creating, and distributing works to which they have

no rights.

 **1. The Balance of Hardships Tips in Plaintiff's Favor**

 Given the damages to the customer base of Plaintiff occasioned by the acts of Defendants, the

balance of hardships tip in Plaintiff's favor.  <u>MAI Systems Corp.</u>, 1992 U.S. Dist. Lexis 21829

(D.C.C.D.Cal.1992).

 When, as here, Defendants interference with Plaintiff's use, control of, distribution and

publication is merely an appropriation of protected material, this Court should find that the balance tips

in Plaintiff's favor.

**E.  Security Should Not be Required**

 Although the Federal Rules of Civil Procedure make the posting of security a prerequisite to

granting the relief that Plaintiff seeks, this Court has discretion to require whatever amount that serves

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.

- 25 –

the interest of justice.  Fed. R. Civ. Pro. Rule 65(c).  Plaintiff BESPAQ is aware of no potential

monetary damage to Defendants – except that which results from Defendants' deliberate decision to

copy Plaintiff's property wholesale – if the injunctions are granted.  Plaintiff has put Defendants on

warning by sending a cease and desist letter to Defendants, but Defendants have chosen to proceed

willfully in the face of the warning that such notices convey.

Moreover, Defendants have violated Plaintiff's protected works willfully and with knowledge of

their own culpability.  Defendants own conduct thereby implicitly testifies to the extremely inequitable

nature of its posture in this case.  Since the Plaintiff, by contrast, comes to Court with clean hands, any

burden incident to a posting a bond should be borne by Defendants.  Therefore, Plaintiff requests that

the Rule 65(c) security requirement be waived. In the alternative, any security requirement should be

nominal.

**CONCLUSION**

Plaintiff has made out a prima facie case of copyright infringement, the violation of its protected

rights, and unfair competition.  Plaintiff's likelihood of success on the merits of this action is thus great.

At the same time, a grave probability of immediate and irreparable harm to Plaintiff exists if a TRO and

a preliminary injunction does not issue.  Not only must such probability be presumed as a matter of law,

but the nature of Plaintiff's business, now undercut by low pricing, is jeopardized by Defendants'

activities.

In light of the foregoing, Plaintiff respectfully requests this Court to issue a TRO and a

Preliminary Injunction in the form of the proposed order submitted herewith.

Dated: September  ____, 2004

The Law Offices of Matthew Kumin, P.C.
MATTHEW WILLIAM KUMIN

By: _____
        Matthew William Kumin, Esq.
        Attorney for BESPAQ

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR TRO/PRELIMINARY INJUNCTION/BESPAQ V. HANSSON et al.